Appellant. Mr. Becker for the appellant. Mr. Smith for the appellate. Judge Pillard, members of the panel, good morning. Good morning, Mr. Smith. For the record, I'm Robert Becker. On behalf of the... Good morning, Mr. Becker. Sorry. When Mr. Head pleaded guilty in 2009 to drug possession, the judge had the right to appeal. The district court had only one choice, to terminate his supervised release and impose a sentence. There were only two areas in which he had discretion. One was the length of the sentence. The other was whether to make it consecutive or concurrent. His discretion in sentencing was to make it between 20 and 60 months, because the original period of supervised release had been 60 months. As for the second, it was his determination. He did not have to use the sentencing guidelines. In fact, the statute did not say anything about using the sentencing guidelines at that point to calculate the sentence on termination of supervised release. In 2009, even if he had run the sentence consecutively, the result would have been trivial because the underlying drug sentence in Superior Court was only 60 days. But by 2012, the sentence was 48 months. Your complaint is that he didn't terminate him immediately? He left him additional chances to screw up more and stop me before I failed again or something? I don't think that's a significant issue in this case. I read your brief and later said I'm not sure what it is exactly that is significant that you're complaining about. You say that he could have done the same thing that he did now. He could have done three years earlier or whatever. What I'm saying is, yes, the sentence could have been the same, but at this point... So what is the significant error that is supposed to warrant relief at this point? The significant error here is that by using the later version of the statute and by using the 2012 guidelines, the sentence violated the ex post facto clause. And isn't that because of... I'm sorry. But you said in your brief, if I read it correctly, he could have done the same thing in the old case as he did in the new case. So how is it an ex post facto violation if he could do the same thing under either law? Ex post facto has to make it harder. Well, that is true, but the fact that the sentence ultimately could have been the same is either under Pew or under this court's decision since Pew is not dispositive of the issue. But isn't, Mr. Becker, the clearer issue whether the district judge applied 7B1.3F and therefore applied the case consecutively with the superior court sentence as opposed to concurrently? And that's a pretty cut and dried question. And as I take it, the district judge said on the record that he believed himself to be required to do consecutive sentencing, which under the correct guideline in effect at the time was not the case. That is true. He felt compelled. That's from those words where he said, I don't see any reason to depart. Is that where we're supposed to read in that he felt compelled to go with? He unfortunately put the length of the sentence in the middle of his sentence. He started off by saying because of your record, I don't see a reason to depart from the dictates if I'm going to impose a guideline sentence. I don't see a reason to depart. How does that tell us that he thought he was compelled to go consecutively? Well, he said it was required of him. He said the guidelines do require that it be consecutive. And clearly under the guidelines at the time and under the statute that was not the case. So in effect, because of the changes in both the statute and the guidelines, there was a significant likelihood or a significant risk or a sufficient risk that the sentence that could be imposed was more strict than the sentence that was actually imposed. The key being the guideline rather than the statute, isn't it? I'm sorry? The key being this guideline rather than the statute. Well, the guideline, yes, but the statute as well because the statute after 1994 fed into the guideline and the statute before 1994 did not feed into the guideline. So your prayer for relief here would be that we should send it back so the judge could decide whether to make it consecutive rather than think he was compelled to make it consecutive. That's correct. We believe that this should be remanded. The judge should make a new sentencing decision based on the original statute and the guidelines as they were in place at the time. And yes, he might come back and say I'm going to impose the same sentence, but that is not the touchstone here. The touchstone here is whether he had, whether he could have, whether under the old statute or under the new statute, the new guidelines, there is the chance that it would be a more strict sentence than the one that was imposed. And we're talking about the old statute. We are, but I believe the government, there are two reasons that is, I don't think, going to help the government. One is I believe there's a case called U.S. v. Clark in 2014 in which the government conceded after Pew that a sentence that was imposed improperly under improper guideline is a, is plain error. And then you have Serro and Enri's sealed case, which deal with both the third and the fourth prongs of plain error, say that improperly imposed sentence is cause, affects substantial rights and that a sentence imposed improperly affects the fairness of the judicial system. So I don't think they, I think the plain error problem is solved in this case because of what happened here. And so we believe that because the sentence could have been more onerous and in fact can be, and in this case there is substantial evidence that because it was, had to be consecutive that the sentence here fell, falls into this category we believe that this is a violation of the ex post facto clause. Now in Pew the court was dealing with the calculation of the guideline range and here we're talking about a policy guidance. Does that make a difference in your view? Well, you know, I wondered about that in this case because even though the seven chapter guidelines are policy statements, the judge said I'm required by 7B 1.3 to make this consecutive. So in effect he was treating it, I think, as a guideline rather than as a policy statement. Well, under Dillon maybe the policy statement is even more binding than the calculation. And in that case it feeds back into E3 and clearly under the pre-existing law and the guidelines it would not have fed back into E3. So that's basically the argument we're making. If there are no further questions I will reserve my time. Thank you, Mr. Becker. Good morning, Mr. Smith. Good morning. May it please the court. Peter Smith on behalf of the United States. The court did not plainly err in applying or in making appellant's sentence consecutive and not concurrent. If the, say hypothetically, if the district judge had specifically said I would make this sentence not consecutive. Well, I'm absolutely obliged by the guidelines to make it consecutive. Would that be error? It could be. Would it be error if he looked through the recent guidelines? Would that be ex post facto? It might be if it was a booker error. If the court felt that it didn't have any discretion. Well, that's what I just said. Right. Then it would be. So the answer to my hypothetical is yes, that would be ex post facto. It would be a plain error, right? If it was a booker error. If the court didn't, I'm sorry, if the district court didn't understand that it had discretion. But I stated the I was absolutely bound as a district judge to do this. That would be an ex post facto. It would be plain error, right? It could be. Why do you keep saying it could be? Why wouldn't it be? I mean, under your hypothetical, if it was booker error, it would be an error. But appellant is not claiming booker error. He's not saying that the court didn't understand it had discretion. He's saying that the court felt that the court was somehow bound by the guidelines. The problem being the guidelines only the newer guidelines would bind him. And that, therefore, so the only question in your mind is whether it's ex post facto is whether the district judge statement could be interpreted the way I put it. I guess in the hypothetical I guess that would be right. But there is an important distinction between the hypothetical in this case, which is here the argument is really, it's not about a guideline range. It's not about the imposition of a guideline range. Which could be concurrent or consecutive. And the district judge said, I would have done this concurrent out of the goodness of my heart. But I'm obliged to do it consecutive. Because of the guidelines. That would be an ex post facto violation, would it not? I guess it could. My response would be it could be. It would depend on this. So it's only a question of interpreting what the district judge said. So it's only a question of interpreting what the district judge said, right? And if we interpret it as at least being susceptible to my hypothetical, then we should remand. I wouldn't say if it's susceptible because here the district judge made clear that he understood he had discretion. How did he do that? He said there's no basis for a departure after he said that he thought he was required that the guidelines required a consecutive sentence. But he also gave other reasons for that sentence. So an appellant had a very poor record on supervised release. He had been arrested six times. He had been convicted of felony threats. The probation office had reported In specific terms would let us know for sure that he knew that he had discretion. Well he said that he could depart and there was nothing in the record. There's always a possibility of a discussion of a departure in the application of a guideline sentence, even during the time when they were deemed mandatory, wasn't there? So how does that statement by the judge tell us that he knew he had discretion here? That statement in connection with the fact that Judge Lamberth is an experienced judge, the court is presuming... I have no doubt that he knew what he could do. But we have to go by the record. No, I understand. And the court is presumed to know the law. And most importantly, appellant is not claiming Booker error. If he had cited Booker, then he would have had a better case? How is this different than Booker error? Booker error is that he thinks he's bound by it. Here, the alleged error is that he thinks he's bound by it. Right, well the difference would be in Booker error, which appellant has disclaimed in his opening brief, would be the court literally doesn't understand that it has discretion. And that is not what appellant is claiming. And here the court understood it. That might be what I'm still trying to figure out. I thought that was what he was claiming, was that the court didn't know it had discretion. I asked him when he was speaking, what is it you're saying is worse than it was under the old regime? And he seemed to be saying that the court should have had the discretion to run it concurrently as opposed to consecutively, but didn't know he had that discretion. Right, I think that was his argument this morning. The argument in his opening brief he specifically says he's not claiming that the court didn't understand it had discretion. His argument is a little more nuanced in his brief. It's that it's similar to the error in Pugh and Terrell, that the court was somehow cabined by the guidelines, and that that somehow influenced its decision. And that is the argument that the government is rebutting in its brief, and that I'm trying to rebut now, that the court's discretion was somehow cabined by the guidelines. And the important difference between this case and other cases like Pugh and Terrell, this court's decision in Terrell, is that here it wasn't a situation like in Terrell where there was a guideline range that simply shifted upwards. Here you had nothing in the guidelines that said one way or the other whether the court was supposed to impose concurrent or consecutive time. And then you had a later imposed guideline that said the court should impose consecutive time. And so Judge Lamberth looked at that and he said, you know, I'm supposed to impose it consecutively and that's what I'm going to do because I don't see any basis in the record for doing otherwise. Under Pugh, the court was allowed to consider that. Pugh says specifically, and it's cited in the government's brief, that the district court is allowed to look at later promulgated guidelines and to consider them. And the only question is, is that an ex post facto violation? If he thinks he's required by the later guidelines, then it is ex post facto. But he's not, although he's using the word required, and he's talking about a departure, he's not saying that it's not Booker error. He's not saying he's bound by the guidelines and he can't depart. He's not saying he can't do it. He's saying this is the requirement of the guidelines, but I can't depart. That's what I'm trying to say. You're saying it better than I am. Maybe I'm worried about it more than you have. Basically what he's saying is that I understand that I'm authorized to give a concurrent sentence, but I'm not. And as I argued before, there are a bunch of reasons why the court would want to give a consecutive sentence in this case. Were you the trial attorney in this case? I was not. I realize defense counsel did not raise an objection, but I don't know why the assistant U.S. attorney wouldn't have said to the judge, could you make it clear, your honor, that you're not relying on the subsequent guideline? Because this is really a tempest in a teapot, isn't it? It would have been helpful if the U.S. Who hoped the assistant U.S. attorney would have said something? It would have been helpful, but that's not the record that we have. That's troubling. They used to make us go to the circuit and defend our own records when I was in the U.S.A. I've done that before, too. I have done that, but not in this case.  I understand the concern the court is expressing. That really applies to the situation where, like in Pew, you have a guideline range that's around 30, and suddenly in Pew, it more than doubles, and it goes up to 70. And you have two totally different guideline ranges. Here you have guidelines that are silent, and then you have a later promulgated guideline that tells the court to do something. Pew says expressly, that the court can consider the later promulgated guideline. That's right, but the thing that's troublingly missing in the record is any narrative that matches your reconstruction, which is, well, I see the guidelines have changed. Under the applicable guidelines here, it's my choice, but given the way the policy from the commission is going, I believe that in my exercise of discretion, I'm going to make this sentence consecutive. Instead, he says, I'm required. And given that this is an experienced judge who's doing a lot of sentencing, and this kind of situation is relatively rare, where you have someone so long afterwards coming up for revocation, the obvious inference is that he's doing what he does on every other day, which is using the current consecutivity guideline. Right, and that's actually what the guidelines tell the district court to do, and it's only the exception where you go back to the time of defense because there could be an ex post facto problem, and I think that actually supports the government's position because this issue comes up on plain error review, and nobody told the district court anything about this, and that makes appellant's prejudice showing very important. I mean, it shifts the burden onto him to show prejudice. He's got to show that he was made worse off by the court's decision at a minimum. Well, it's clearly prejudice. I mean, are you sort of saying that, oh, we know that the district judge would have done this anyway? Well, the district court gave reasons. I mean, the appellant's history of conduct when he was on supervised release involved six different arrests. We know. It's not a pretty picture, and he's having his release revoked, and so that's clearly warranted on this record, but we don't have any discussion linking that to his decision about concurrent versus consecutive. Right, and I mean, I hear that, and the problem was created by defense counsel's failure to object. I mean, the paucity of the record to the extent the court finds that is really, that's on appellant, and I'm suggesting that the court does... The record has to be with a different counsel than the... Yes, yeah, appellant and non-appellant's counsel, yes. That's on the defense side, because they didn't create the record they need, and on plain error view, that's... The burden is on them to show prejudice. The burden is on them to show error, and what I'm suggesting is that the district court did do enough, and he did give enough reasons, not that appellant can't prevail under the plain error standard. I realize this can't make any difference, but I'm curious. How much longer does he have to serve now if we do nothing? I don't know the answer to that question. Perhaps appellant's counsel knows. We'll find out maybe. I would think that he's very near that. What I was thinking, that we're not talking about very much here. He got 48 months for the assaultive offense, and that was consecutive to the 30 months, and it's... And he would potentially get good time credits and whatnot, so I... If there are no further questions... I'm sorry? I probably shouldn't have asked you. If there are no further questions, we urge the court to affirm the judgment of the district court. Thank you very much. To the extent that there was booker error in this case, it was in looking to the guidelines did not apply to this case under the pre-1994 statute. So the reason there is no real booker error here is a booker error involves erroneous application of the guidelines. And that's why there really is not... This is not a booker question. And to the extent that the judge... But it's analogous. It's analogous, but we are so accustomed now to relying on the guidelines for everything, and certainly since... I guess the guidelines... I just want to make a point. To a large extent, the problem here was the judge was advised wrongly by everyone involved, starting with the probation office, which used the wrong set of guidelines at the beginning. It never went back and looked at what the record should be. And as to the issue of... Actually, if he had committed these crimes just a few months earlier, the guidelines wouldn't have applied at all. That's correct. The guidelines went in in 88, and the guidelines went in in 87. That's correct. But the guidelines under 3583G, the statute said this is what the sentence will be. It will be one-third of the period of supervised release to the full period of supervised release without reference to the guidelines. So there cannot be booker error here. Really. Mr. Becker, what is the remaining... Is it the 30 months? My recollection is that his early release date would be sometime in 2017 to early 2018. So he does have time left. Oh, I know that it's important to him. I understand that. I had clients who were worried to report on a date that would let him get out on a Friday instead of waiting until Monday or something. As for the issue of... If we look at this case at the beginning of April 2010, the probation office was calculating his guideline sentence as 7 to 13 months. Push come to shove, the government would have come in and said no, you have to give him at least 20 months because that's what the original statute said. They could not have imposed... Judge Lamberth could not have imposed a 7 to 13 month sentence. So this is an issue that is... The reason we haven't argued substantive unreasonableness is the sentence is within the range permitted by the statute, but it has nothing to do with the guidelines. So I think that there really is an ex post facto violation here because the judge now could have imposed... Under the current regime could impose a far more onerous sentence than would have been permitted in the context of the statute and the guidelines to the extent they applied at the time of the sentence. So I would urge you to reverse and remand this case for resentencing pursuant to the original statute. Thank you. Thank you, Mr. Becker. The case is submitted. Thank you. Mr. Becker, I recognize you were appointed by the court. Is that correct? We thank you very much for your service today.
judges: Pillard, Silberman, Sentelle